FILED
2013 Jul-01  AM 10:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **LIBERTY MUTUAL INSURANCE CO.,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-09-S-773-NW** |
| | ) | |
| **FLEET FORCE, INC.,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

### MEMORANDUM OPINION AND ORDER

This case is before the court on a motion by plaintiffs, Liberty Mutual Insurance Company and Employers Insurance Company of Wausau, asking the court to enter default against defendants, Fleet Force, Inc., and Fleet Operators Group, Inc., pursuant to Federal Rule of Civil Procedure 55(a).[1]  Although those defendants initially appeared and interposed defenses to the claims asserted by plaintiffs, they have not responded to plaintiffs' third amended complaint.  Indeed, both Fleet Force, Inc., and Fleet Operators Group, Inc., have affirmatively communicated through counsel that they have no intention of further defending their positions.[2]  Moreover, as the procedural history of this action demonstrates, those defendants repeatedly have failed to timely respond to filings during the course of this litigation, and they have

---

[1] Doc. no. 90.

[2] Doc. no. 85 (Statement of Entity Status), at 2; *see also* doc. no. 90 (Motion for Entry of Default), at 2 (recounting defense counsel's representation at an April 8, 2013 status conference that defendants are out of business and no longer intend to defend against plaintiffs' claims).

caused a substantial delay in the resolution of this case.

The first issue raised by plaintiffs' motion is found in the language of the rule upon which the motion is based. Rule 55(a) provides that: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, *the clerk* must enter the party's default." Fed. R. Civ. P. 55(a) (emphasis supplied). Despite the Rule's explicit statement that the ministerial act of entering a party's default on the record of the case "must" be accomplished by "the clerk," courts and commentators alike have held that a *court* also may enter a party's default. For example, Professors Wright, Miller, and Kane's definitive treatise contains this statement, distilled from an examination of numerous cases: "The fact that Rule 55(a) gives *the clerk* authority to enter a default is not a limitation on the power of *the court* to do so." 10A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 2682, at 19 (3d ed. 1998) (emphasis supplied, footnote omitted); *see also Embassy of the Federal Republic of Nigeria v. Ugwuonye*, 901 F. Supp. 2d 92, 95 n.6 (D. D.C. 2012) ("While Rule 55(a) gives the Clerk authority to enter a default, it is not a limitation on the power of the court to do so.") (citing *Fisher v. Taylor*, 1 F.R.D. 448 (E.D. Tenn. 1940) (same)). "Since the court has the authority to enter a judgment by default, [*a fortiori*] it impliedly has the power to perform the ministerial function assigned to the clerk of

entering default." *Beller & Keller v. Tyler*, 120 F.3d 21, 22 (2d Cir. 1997) (quoting

6 James William Moore *et al.*, *Moore's Federal Practice* § 55.02[3] (2d ed. 1983))

(alteration supplied); *see also*, *e.g.*, *United States for & in Behalf of Federal Housing

Administration v. Jackson*, 25 F. Supp. 79, 79-80 (D. Or. 1938) ("Under Rule 55, . .

. default should be entered by the clerk as of course without any application to the

court.  However, since the court has power to enter an order of default and Rule 55 is

not a limitation thereof, the court grants the motion and enters the default.").

A district judge's decision about whether he or she should perform the

ministerial function of entering default that is assigned to the clerk by the text of Rule

55(a) is vested within the judge's sound discretion.  *See*, *e.g.*, *U.S. Commodity Futures

Trading Commission v. Harrison*, No. 8:13-CV-00327-GRA, 2013 WL 812054, at *1

(D. S.C. Mar. 5, 2013) (holding that "it is within a district court's 'sound discretion'

in deciding whether to direct that entry of default be made as to a party") (citing

*Brown v. Weschler*, 135 F. Supp. 622, 624 (D. D.C. 1955) ("In deciding whether an

entry of default shall be made by order of Court, a sound discretion will be exercised.

The Court will not go through formal entry of default in a case when it is apparent that

in the exercise of its discretion the default will be set aside on motion.") (in turn citing

*Erick Rios Bridoux v. Eastern Air Lines, Inc*., 214 F.2d 207 (D.C. Cir. 1954))).

The more difficult question raised by the present motion is whether it is proper

3

for *either* the clerk *or* the court to enter default *after* a defendant has appeared in the action.    Eleventh Circuit precedent about the propriety of doing so in such circumstances is ambiguous.   Accordingly, the remainder of this decision will address that issue.

## I.  PROCEDURAL HISTORY

The procedural history of this action is as discombobulated and confusing as can be imagined.  It began simply enough on April 22, 2009, when Liberty Mutual Insurance Company and Employers Insurance Company of Wausau commenced this action by filing a complaint asserting claims against only one defendant, Fleet Force, Inc. ("Fleet Force").  That initial pleading alleged claims for accounts due, breach of contract, and unjust enrichment.[3]  Fleet Force was served with process on April 27, 2009,[4] and filed an answer to the complaint on June 5, 2009, and asserted counterclaims against plaintiffs for breach of contract, fraud, and breach of fiduciary duty.[5]  Even though that was 39 days after Fleet Force had been served with process, the answer and counterclaim were deemed timely, because this court had twice granted unopposed motions to extend the time for Fleet Force to file an answer or other responsive pleading.[6]

---

[3] Doc. no. 1 (Complaint).

[4] *See* doc. no. 5 (Return on Summons).

[5] *See* doc. no. 9 (Answer and Counterclaim of Fleet Force, Inc.).

[6] *See* doc. no. 6 ("Unopposed Motion to Extend Time to File Answer or Other Responsive Pleading"); doc. no. 8 (second "Unopposed Motion to Extend Time to File Answer or Other

Plaintiffs filed an amended complaint on August 28, 2009, which added two new defendants:  Fleet Operators Group, Inc. ("Fleet Operators"); and, an entity identified as TAI, LLC ("TAI").  The amended complaint contained four counts, but TAI was named as a defendant to only one of the claims.  That is, the first three counts of the amended complaint alleged the same claims that had been pled in the original complaint (*i.e.*, claims for accounts due, breach of contract, and unjust enrichment), but those claims were asserted against only Fleet Force and Fleet Operators, and not TAI.  The fourth count asserted a claim for declaratory relief against all three defendants.[7]

Fleet Force filed an untimely answer to the first amended complaint *over twenty months later*, on May 12, 2011.[8]  *See* Fed. R. Civ. P. 15(a)(3) (requiring that a response to an amended pleading be made *within 14 days* of service).

Fleet Operators, appearing through the same counsel as Fleet Force, also filed an answer to the amended complaint on May 12, 2011.[9]  It is unclear, however, whether that answer was untimely, because the docket sheet does not reflect whether Fleet Operators ever was served with a copy of the amended complaint; or, if so, when

---

Responsive Pleading"); *see also* Margin Orders entered on May 14 and May 28, 2009, respectively, granting both motions.

[7] Doc. no. 15 (First Amended Complaint) ¶¶ 33, 37.

[8] Doc. no. 37 (Fleet Force's Answer to the First Amended Complaint, Answer to the Second Amended Complaint, and Counterclaim).

[9] Doc. no. 38 (Fleet Operator's Answer to the First Amended Complaint, Answer to the Second Amended Complaint, and Counterclaim).

5

that event occurred.

TAI was served with process (*i.e.*, a copy of the amended complaint, summons, etc.) on September 23, 2009.[10]  On October 13, 2009, the date its answer was due, TAI filed a motion for an extension of time within which to file an answer.[11]  The motion was granted by means of an electronic margin order extending TAI's time to answer to October 23, 2009.  TAI thus timely filed an answer to the amended complaint on October 22, 2009, and that pleading included crossclaims against defendants Fleet Force and Fleet Operators (collectively "defendants").[12]

Fleet Force did not respond to TAI's crossclaim.

Fleet Operators also did not respond to TAI's crossclaim. As was the case with the amended complaint, however, it is unclear whether Fleet Operators ever was served with a copy of TAI's crossclaim; or, if so, when that event occurred.  Even so, over a year passed between May 12, 2011, the date on which Fleet Operators entered an appearance in this case,[13] and July 31, 2012, the date on which defendant (and crossclaim-plaintiff) TAI was dismissed as a party to the action, and its crossclaims dismissed as well.[14]

---

[10] *See* doc. no. 19.

[11] *See* doc. no. 20.

[12] Doc. no. 22 (Answer and Crossclaim).

[13] *See* doc. no. 38 (Fleet Operator's Answer to the First Amended Complaint, Answer to the Second Amended Complaint, and Counterclaim).

[14] *See* doc. no. 67 (Order Dismissing Fewer Than All Defendants).

Fleet Force's untimely answer to the amended complaint, filed *over twenty months after service*, on May 12, 2011,[15] did not elicit any motion from plaintiffs. Instead, after obtaining leave of court, plaintiffs filed a *second amended* complaint on March 23, 2011.[16]  That complaint supplemented, rather than supplanted, the allegations contained in the *first amended* complaint.

Once again, Fleet Force did not respond to the allegations of the second amended complaint within the fourteen-day period required by Rule 15(a)(3). Consequently, plaintiffs filed a "motion for default judgment" on May 9, 2011, and asked this court "to enter a default on the docket" against defendants.[17]  Apparently, plaintiffs' counsel either conflated or confused Rule 55(a), which addresses an *entry of default*, with Rule 55(b), which deals with entering a *default judgment*.[18]

Fleet Force and Fleet Operators filed answers to the second amended complaint on May 12, 2011.[19]  Because the allegations in the second amended complaint

---

[15] Doc. no. 37 (Fleet Force's Answer to the First Amended Complaint, Answer to the Second Amended Complaint, and Counterclaim).

[16] Doc. no. 34 (Second Amended Complaint).

[17] Doc. no. 36 (Motion for Default Judgment), at 1.

[18] Plaintiffs also elided the distinction between Fleet Force, which *had* been served and previously appeared in the case, and Fleet Operators, which *neither* had previously appeared *nor*, according to the docket sheet, been served.  An affidavit filed in support of the motion noted that the court "docketed the Second Amended Complaint on March 23, 2011" before asserting that "this Court served Defendants Fleet Force, Inc. and Fleet Operators, Inc. electronically with a copy of the Summons and Complaint on March 23, 2011."  Doc. no. 36-1 (Affidavit of Tenley Armstrong) ¶ 3. But the electronic filing of a complaint against a defendant does not amount to service when that defendant has not previously been served or appeared in the case.

[19] Doc. no. 37 (Fleet Force's Answer to the First Amended Complaint, Answer to the Second Amended Complaint, and Counterclaim); doc. no. 38 (Fleet Operator's Answer to the First Amended

supplemented, rather than replaced, the allegations in the first amended complaint, defendants' May 12, 2011 pleadings were also presented as answers *to the first amended complaint*.  Those pleadings also asserted, on behalf of *both defendants*, the three counterclaims that *Fleet Force alone* had asserted in its response to the *original* complaint.[20]  Defendants then responded to plaintiffs' motion for default judgment on May 20, 2011.[21]  No immediate action on the motion was taken.

On October 14, 2011, plaintiffs moved for the entry of summary judgment in favor of plaintiffs on their breach of contract claim, as well as the counterclaims asserted by defendants Fleet Force and Fleet Operators.[22]  Shortly thereafter, defendants' original attorneys withdrew from the case.[23]  The court granted in part and denied in part plaintiffs' motion for summary judgment on June 29, 2012.[24]  Defendants' counterclaims for fraud and breach of fiduciary duty were dismissed, but their breach of contract counterclaim, as well as plaintiffs' breach of contract claim, remained.[25]  The court also summarily denied as moot plaintiffs' motion for default

---

Complaint, Answer to the Second Amended Complaint, and Counterclaim).

[20] Doc. no. 37 (Fleet Force's Answer to the First Amended Complaint, Answer to the Second Amended Complaint, and Counterclaim), at 7-11; doc. no. 38 (Fleet Operator's Answer to the First Amended Complaint, Answer to the Second Amended Complaint, and Counterclaim), at 7-11.

[21] Doc. no. 39 (Response in Opposition to Motion for Default Judgment).

[22] Doc. no. 43 (Motion for Summary Judgment).

[23] Doc. no. 47 (Motion to Withdraw); Margin Order of Nov. 22, 2011.

[24] *See* doc. no. 61 (Memorandum Opinion and Order), at 30.

[25] *Id.* at 24-30.

judgment.[26]

The court subsequently set a pretrial conference for August 28, 2012.[27]  On August 27, 2012, defendants' attorneys moved to withdraw from the case and suspend all pending deadlines and settings, citing "irreconcilable differences" with their clients.[28]  The court denied the motion without prejudice, and ordered defendants' attorneys to appear at the pretrial conference.[29]  During that pretrial conference, the court made clear that it could not allow defense counsel to withdraw without the appearance of replacement counsel, because corporate entities cannot appear *pro se*. Although not opposing the motion *per se*, plaintiffs presciently voiced their concern that the resolution of the case would be further delayed.  In an August 31, 2012 order, the court noted its "predicament of being unable to grant the motion to withdraw until the defendants procure alternative counsel."[30]  "[I]n an effort to facilitate the timely adjudication of this case," the court ordered defense counsel to serve both of their clients with the motion to withdraw, and ordered defendants to file, by September 7, 2012, an explanation for why they had not procured alternative counsel.[31]

---

[26] *Id.* at 30.

[27] Margin Order of July 30, 2012.  A later order changed the location of the conference from Huntsville to Birmingham.  *See* Margin Order of August 24, 2012.

[28] Doc. no. 70 (Motion to Withdraw), at 2.

[29] Doc. no. 71.

[30] Doc. no. 74 (Order), at 2.

[31] *Id.* (alteration supplied).

Defendants' corporate representative's September 7th response to the court's order hinted at defendants' financial troubles.  Defendants stated that they had "retained a law firm *to evaluate the future of the company* [*sic*], but that firm has chosen to limit its involvement to that role and will not be appearing in this litigation. However, that law firm is helping [defendants] seek out new representation for this litigation while they *look at the overall condition of the company* [*sic*]."[32]  Defendants requested "sufficient time to retain new counsel."[33]  The court reiterated on September 12, 2012, that it could not grant the motion of defense counsel to withdraw until alternative counsel of record appeared, at which time the motion to withdraw could be renewed.[34]

"A telephone conference with . . . counsel [for defendants on October 15, 2012] revealed that, despite the passage of more than a month [since the court's last ruling], alternative counsel [for defendants] still ha[d] not been retained."[35]  The court ordered defendants to retain new counsel by noon on October 19, 2012, lest default be entered against them.[36]  *Finally*, new counsel for defendants — the *third* set of attorneys to represent Fleet Force and Fleet Operators — appeared on October 19, 2012.[37]

---

[32] Doc. no. 76-1 (Ex. A), at 2 (emphasis and alteration supplied).

[33] *Id.*

[34] Doc. no. 77 (Order).

[35] Doc. no. 78 (Order), at 1 (alterations supplied).

[36] *Id.*

[37] Doc. no. 79 (Notice of Appearance).

10

The case remained more or less dormant for five months, to allow the new defense attorneys to become familiar with the issues and facts.  Finally, on March 19, 2013, plaintiffs filed a motion for a status conference, and represented that defendants "have indicated they do not intend to continue to defend this case."[38]  More specifically, defense counsel allegedly had informed plaintiffs' counsel on February 14, 2013 of his belief that defendants were "'out of business' and will no longer defend themselves or litigate their counterclaims in this lawsuit."[39]  The court granted the motion and ordered defense counsel to appear at a status conference on April 8, 2013.[40]  During that conference, defense counsel reiterated that defendants were out of business and would no longer defend the action.[41]

Following the conference, defendant Fleet Force filed a "statement of entity status," claiming that it is a "wholly owned subsidiary of Fleet Partners, Inc," and that defendant Fleet Operators was, in turn, "an operating division of Fleet Force."[42]  The statement asserted that Fleet Force "has assets of less than $3,000.  Fleet Partners, Inc.'s assets are limited to the value of Fleet Force Inc. corporate stock which it still

---

[38] Doc. no. 83 (Motion for Status Conference), at 1.

[39] *Id.* at 2.

[40] Doc. no. 84 (Order).

[41] *See* doc. no. 90 (Motion for Entry of Default), at 2 (recounting defense counsel's representations at the April 8, 2013 status conference).

[42] Doc. no. 85 (Statement of Entity Status), at 1 & n.1.

11

holds."[43]  Fleet Force was not filing for bankruptcy, however, because legal counsel determined it could not receive a discharge, and state law did not permit the entity to dissolve while holding outstanding debts.[44]  Finally, the statement reported that Fleet Force "does not presently have the financial resources to further appear and defend its position in this litigation."[45]

After receiving leave from the court, plaintiffs filed a *third amended* complaint on April 11, 2013.[46]  To date, neither Fleet Force nor Fleet Operators have filed an answer or other response to that pleading.  Plaintiffs prematurely moved for a *default judgment* under Rule 55(b)(1) on May 2, 2013.[47]  The court denied the motion without prejudice on June 3, 2013, permitting defendants to renew the motion in the event they obtained an entry of default under Rule 55(a).[48]  Plaintiffs then filed the present motion for entry of default.[49]

## II.  ANALYSIS

### A.  Defendants' Breach of Contract Counterclaim

The court's June 20, 2012 summary judgment opinion dismissed the

---

[43] *Id.* at 2.

[44] *Id.*

[45] *Id.*

[46] Doc. no. 87 (Third Amended Complaint).

[47] Doc. no. 88 (Motion for Default Judgment).

[48] Doc. no. 89 (Order), at 1-2.

[49] Doc. no. 90 (Motion for Entry of Default).

counterclaims for fraud and breach of fiduciary duty asserted by defendants Fleet Force and Fleet Operators, but allowed their breach of contract counterclaim to remain pending.[50]   Given defendants' failure to pursue that claim, and their repeated indications that they do not intend to participate further in this case, that claim is due to be dismissed for failure to prosecute.

## B.   Entry of Default After a Party's Initial Appearance

As noted at the beginning of this opinion, the ministerial act of entering a default on the record of a case is proper only when "a party against whom a judgment for affirmative relief is sought has failed to plead *or otherwise defend*."  Fed. R. Civ. P. 55(a) (emphasis supplied).  The Courts of Appeals disagree over what, precisely, it means to fail to "otherwise defend."

### 1.   The majority view

The overwhelming majority of courts have embraced a board understanding of the phrase "or otherwise defend."  *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129-31 (2d Cir. 2011) (compiling cases).  Most hold that an entry of default is proper *whenever* the defendant fails to engage in litigation, *regardless* of the stage at which such failure occurs.  The Second Circuit's  decision in the *Mickalis Pawn* case is illustrative.  In that case, one defendant refused to participate in the litigation after its motion to dismiss was denied, and another defendant similarly

---

[50] Doc. no. 61 (Memorandum Opinion and Order), at 24-30.

elected not to defend the case on the eve of trial.  *Id.* at 121-23.  Entries of default and default judgments were subsequently entered by the district court.  *Id.* at 122-25.  Both defendants appealed on the grounds that their withdrawal from the litigation was not a sufficient ground for entering default against them.

> They assert[ed] that because over the course of several years they appeared in the litigation, repeatedly moved to dismiss, eventually filed an answer, and vigorously defended themselves in discovery, they did not "fail[ ] to plead or otherwise defend" within the meaning of Rule 55(a).  They argue[d] that Rule 55(a) therefore did not apply, *and that the City was required to proceed to trial and prove its case*, including the existence of personal jurisdiction over the defendants, by a preponderance of the evidence.

*Id.* at 129 (first and third alterations supplied, second alteration in original, emphasis supplied).  The Second Circuit affirmed the district judge's actions, saying that "each defendant affirmatively signaled to the district court its intention to cease participating in its own defense, even after the defendant was clearly warned that a default would result." *Id.* at 130.  Moreover, "both defendants clearly indicated that they were aware that their conduct likely would result in a default."  *Id.*

The interpretation of Rule 55(a) embodied in the *Mickalis Pawn* opinion has been adopted by the Third, Fourth, Seventh, Eighth, and Ninth Circuit Courts of Appeals.[51]  *See Hoxworth v. Blinder, Robinson & Co., Inc.,* 980 F.2d 912, 917 (3d Cir.

---

[51]  Although *Mickalis Pawn* cited the First Circuit's decision in *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit International, Inc.*, 982 F.2d 686, 692-93 (1st Cir. 1993), *Goldman* actually interpreted Rule 55(b)(2), not Rule 55(a).

1992) (rejecting the argument that "Rule 55 cannot be used to impose a default against a defendant who has filed an answer and actively litigated during pretrial discovery"); *Home Port Rentals, Inc. v. Ruben*, 957 F.2d 126, 129 133 (4th Cir. 1992) (holding that the defendants fit the "otherwise defend" category of Rule 55(a) by "failing to cooperate in discovery, refusing to submit to depositions, and failing to participate in the defense of the suit"); *Grossman v. Smart*, No. 95-1178, 1995 WL 767893, at *1-2 (7th Cir. 1995) (affirming entry of default for "failure to defend by not appearing at trial"); *Ackra Direct Marketing Corp. v. Fingerhut Corp.*, 86 F.3d 852, 856 n.4 (8th Cir. 1996) (affirming a default judgment entered by the district court "pursuant to the 'failure to defend' standard under Rule 55"); *Ringgold Corp. v. Worrall*, 880 F.2d 1138, 1141-42 (9th Cir. 1989) (affirming an entry of default after defendant's failure to appear at trial, and discussing with approval a Second Circuit case doing the same).

**2.   Eleventh Circuit precedents**

The former Fifth Circuit took a narrower view of Rule 55(a) in *Bass v. Hoagland*, 172 F.2d 205 (5th Cir. 1949), however; and, of course, that decision remains binding authority in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

The *Bass* Court ruled that the "words 'otherwise defend' refer to *attacks on the service, or motions to dismiss, or for better particulars, and the like*, which *may* prevent default without presently pleading to the merits." *Bass*, 172 F.3d at 210 (emphasis supplied).  In short, an entry of default is permitted when a party fails to plead (*e.g.*, by not answering) or file a responsive motion (*e.g.*, a motion to dismiss), but *not* when — as was the issue in *Bass* — the party fails to appear at trial.

Even under the narrower *Bass* standard, an entry of default is proper in the present case.  Morever, other cases within this Circuit support a district court's authority to make an entry of default as a sanction for a defendant's dilatory tactics, or its failure to comply with court orders or rules of procedure.  In *Bass*,

> the plaintiff [successfully] sued [in a Texas federal district court] to enforce a default judgment obtained in [a Kansas] federal court.  In the [Kansas] trial court the defendant appeared, answered, and requested a jury trial.  Defense counsel then withdrew.  On the day of trial defendant was not present.  The [Kansas] trial judge treated the defendant in default because of the earlier withdrawal of his counsel and entered judgment for the plaintiff in the precise amount requested in his complaint, without a jury trial and apparently without taking any evidence.  Defendant was not aware of the trial date, was given no notice prior to the entry of the default judgment, and was fraudulently not informed of the judgment until more than two years after it was entered.  The [*Bass*] court held that the *combination* of these errors resulted in a denial of due process. . . .

*Fehlhaber v. Fehlhaber*, 681 F.2d 1015, 1027-28 (5th Cir. Unit B 1982)[52] (alterations

---

[52] In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir. 1982), the Eleventh Circuit adopted as binding precedent all decisions of the "Unit B" panel of the former Fifth Circuit handed down after September 30, 1981.

and emphasis supplied) (internal citations and footnotes omitted). In finding fault

with the Kansas court's entry of default, the *Bass* Court reasoned as follows:

> [Rule 55(a)] does *not* require that to escape default the defendant must
> not only file a sufficient answer to the merits, but *must also* have a
> lawyer or be present in court when the case is called for a trial. The
> words "otherwise defend" *refer to attacks on the service, or motions to
> dismiss, or for better particulars, and the like,* which *may* prevent default
> without presently pleading to the merits. When Bass by his attorney filed
> a denial of the plaintiff's case neither the clerk nor the judge could enter
> a default against him. The burden of proof was put on the plaintiff in
> any trial. When neither Bass nor his attorney appeared *at the trial,* no
> default was generated; the case was not confessed. The plaintiff might
> proceed, but he would have to prove his case. . . . Bass under the
> admitted facts knew he was not in default, *did not know his counsel had
> withdrawn,* and had no notice that a judgment by default was to be
> asked.

*Bass*, 172 F.2d at 210 (alteration and emphasis supplied).

The facts of *Bass* differ significantly from those of this case. For instance,

Bass's counsel "withdrew" from the case without the knowledge or consent of his

client. *Id.* at 207-208. Here, defendants continue to be represented by counsel, and

have affirmatively indicated through that attorney on more than one occasion that they

will not further defend the case.[53]

The dispositive difference in the present case, however, is that plaintiffs filed

a *third amended complaint*, and defendants have not filed an answer or other

---

[53] *See, e.g.*, doc. no. 85 (Statement of Entity Status), at 2; *see also* doc. no. 90 (Motion for Entry of Default), at 2 (recounting defense counsel's representation at a April 8, 2013 status conference that defendants are out of business and no longer intend to defend against plaintiffs' claims).

17

responsive pleading.  Such inaction by defendants places the case within even *Bass*'s narrow interpretation of Rule 55(a).  *See*, *e.g.*, *Tara Productions, Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 910 (11th Cir. 2011) (*per curiam*) (affirming an entry of default when a defendant failed to respond to plaintiff's second amended complaint).

An amended complaint that is complete within its four corners, and that does not incorporate by reference allegations from prior pleadings, supercedes the prior complaint.[54]  *See Pintando v. Miami-Dade Housing Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007); *Fritz v. Standard Security Life Insurance Co.*, 676 F.2d 1356, 1358

---

[54] An exception to that rule exists when the pleader incorporates by reference allegations from prior pleadings into the new pleading.  *See Dupree v. City of Phenix City*, No. 3:10-CV-970-WKW, 2012 WL 4378207, at *2 n.1 (M.D. Ala. Sept. 25, 2012) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir.1985)); *see also* 6 Charles Alan Wright *et al.*, Federal Practice and Procedure § 1476, at 640-41 (3d ed. 2010). Such was the case with the first and second amended complaints. *See* doc. no. 1 (Complaint) (containing paragraphs 1 through 32); doc. no. 15 (First Amended Complaint) (containing paragraphs 33 through 50); doc. no. 34 (Second Amended Complaint) (containing paragraphs 51 through 66).  The *third amended complaint*, however, is a self-contained pleading that consists of paragraphs numbered 1 through 61.  *See* doc. no. 87.  Thus, the general rule applies to the third amended complaint.

In the future, however, plaintiffs' attorneys would do well to heed the following advice from a respected authority:

[T]o ensure that the pleadings give notice of all the issues that are in controversy so they can be handled and comprehended expeditiously, *the safer practice is to introduce an amended pleading that is complete in itself*, rather than one that refers to the prior pleading or seeks to incorporate a portion of it.  Indeed, if the original pleading is short, it will be a simple matter to reassert the allegations that are to be retained in the amended pleading.  Even if the pleading is lengthy and involved, *a self-contained amended pleading will assist the parties and the court in dealing with issues better than one that is replete with references to another pleading*.

6 Charles Alan Wright *et al.*, Federal Practice and Procedure § 1476, at 641 (3d ed. 2010) (alteration and emphasis supplied).

18

(11th Cir. 1982).  "[A]ny required response to an amended pleading *must* be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later."  Fed. R. Civ. P. 15(a)(3) (alteration and emphasis supplied); *see also* Fed. R. Civ. P. 12(a)(1)(A) (setting forth the required time to file an answer to an initial complaint).

Defendants have failed to "plead" in response to the third amended complaint within the meaning of Rule 55(a), because they have not filed an answer.  *See* Fed. R. Civ. P. 7(a) (listing the types of pleadings, including an answer, that are allowed). They have also failed to "otherwise defend," because they have not filed an "attack[] on the service, or a motion[] to dismiss, or for better particulars, [or] the like."  *Bass*, 172 F.2d at 210 (alterations supplied).

Of course, this case was approaching trial in August of 2012, when a pretrial conference was held.  If the case had reached trial when defendants abandoned their defense, *Bass* may have barred an entry of default and forced plaintiffs "to prove [their] case." *Id.* at 210 (alteration supplied).  But plaintiffs' filing of a third amended complaint averted that scenario, and defendants' subsequent failure to respond justifies an entry of default.

The court also has the authority to make an entry of default based on defendants' repeated failure to abide by the Federal Rules of Civil Procedure, as well

19

as the delay it has caused in adjudicating this case.

In *McGrady v. D'Andrea Electric, Inc.*, 434 F.2d 1000 (5th Cir. 1970), "defendant corporation filed an 'answer' in the form of a letter from its president denying the allegations of the complaint." *Id.* at 1001. The district court subsequently held a pretrial conference, but no representative for defendant appeared. *Id.* The court ordered an entry of default, and it later denied defendant's timely motion to set aside the default. *Id.* The former Fifth Circuit deemed it unnecessary to decide whether the defendant's "purported 'answer' was adequate" — *i.e.*, an issue that may have barred an entry of default under Rule 55(a) — because the district court *also* based its order on defendant's failure to appear at the pretrial conference. *Id.* (alterations supplied). Finding "sufficient evidence of [defendant's] delay and failure to comply with court rules to justify an entry of default," the Court upheld the district court's "power to order entry of a default for failure to comply with court orders or rules of procedure." *Id.* (alteration supplied); *see also Gulf Coast Fans, Inc. v. Midwest Electronics Importers, Inc.*, 740 F.2d 1499, 1512 (11th Cir. 1984) (holding that a defendant's "failure to appear at a duly scheduled trial after months of preparation by the parties and by the trial court is a serious offense for which the entry of a default is appropriate").

Put differently, *even assuming* a defendant has appeared and answered, the

20

court *still* has the authority to order an entry of default when there is sufficient evidence of defendant's dilatory tactics or failure to comply with court orders and the rules of procedure.  Such is the case here.  As the procedural history recounted in Part I of this opinion, *supra*, reveals, defendants Fleet Force and Fleet Operators:  failed to respond to TAI's crossclaim; brought a trial-ready case to a halt for roughly eight months; indicated on more than one occasion that they do not intend to defend this action; and failed to answer or otherwise plead in response to plaintiffs' third amended complaint.  In short, defendants have repeatedly disregarded their obligations under Rules 12(a) and 15(a) to timely file responsive pleadings, as well as caused a substantial delay in the resolution of the case.  Those facts independently justify an entry of default as a sanction for such conduct.  *See Gulf Coast Fans*, 740 F.2d at 1512; *McGrady*, 434 F.2d at 1001.

### III.  CONCLUSION AND ORDER

For all the foregoing reasons, plaintiffs' motion for an entry of default against defendants is GRANTED.[55]  The clerk is directed to enter default on the record of this case against defendants Fleet Force, Inc., and Fleet Operators Group, Inc.  The sole remaining counterclaim asserted by those defendants, for breach of contract, is DISMISSED with prejudice for failure to prosecute.  Plaintiffs are directed to file, within seven days of the date of this order, a motion for entry of default judgment,

---

[55] Doc. no. 90.

together with any supporting affidavits or other proof of the damages claimed, and to

simultaneously effect service of that motion and its attachments upon defendants.

DONE and ORDERED this 1st day of July, 2013.

_____
United States District Judge